**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LEAL R. PICKERING and | : | CIVIL ACTION NO. |
| WANDA LEE SAMPEL, | : | 3:14-CV-01207 (VLB) |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| AUGUST DeFRANCE, et al., | : | |
|     Defendants. | : | September 30, 2016 |

<u>MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 38]</u>

Plaintiffs Leal R. Pickering ("Pickering") and Wanda Lee Sampel ("Sampel")

allege violations of 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth

Amendments, and Connecticut law arising from a vehicle stop, search, and arrest

on September 23, 2012. Currently pending before the Court is Defendant's Motion

for Summary Judgment as to all claims.  For the reasons that follow, the

Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED

IN PART.

I.    <u>Factual Background</u>

The following facts are based on the evidence cited in Defendants' Local

Rule 56(a)(1) Statement of Facts [Dkt. No. 38-2 ("Defendants' Ex.")] and Plaintiffs'

Local Rule 56(a)(2) Statement of Facts [Dkt. No. 41-2 ("Plaintiffs' Ex.")].

At all relevant times, plaintiffs Leal Pickering and Wanda Sampel resided at

44 Rome Avenue, Middletown, Connecticut.  Defendants' Ex. A (Pickering

Deposition Transcript) ("Pickering Tr.") at 15; Defendants' B (Sampel Deposition

1

Transcript) ("Sampel Tr.") at 7.  At all relevant times, Defendants Officers August DeFrance, Robert Kraeger, Louis Julia, James Remotti, and Daniel Schreiner were employed and on duty as patrol officers in the Middletown Police Department, and Defendant Sergeant Lukanik was employed and on duty as a sergeant in that Department.  Defendants' Ex. C (DeFrance Deposition Transcript) ("DeFrance Tr.") at 4-5; Defendants' Ex. D (Kraeger Deposition Transcript) ("Kraeger Tr.") at 4-5; Defendants' Ex. E (Julia Deposition Transcript) ("Julia Tr.") at 5; Defendants' Ex. F (Remotti Deposition Transcript) ("Remotti Tr.") at 4-5; Defendants' Ex. G (Schreiner Deposition Transcript) ("Schreiner Tr.") at 4-5.

On September 22, 2012, Officer Kraeger received an anonymous tip that a female named Wanda Sampel and a man named "Lee" were selling heroin out of their residence at 44 Rome Avenue in Middletown, Connecticut.  Defendants' Ex. C (DeFrance Tr.) at 13; Defendants' Ex. D (Kraeger Tr.) at 19-24.  As a result of the tip, Officer Kraeger researched Ms. Sampel in the Middletown Police Department's computer system and found records of a past narcotics arrest and an address of 44 Rome Avenue.  Defendants' Ex. D (Kraeger Tr.) at 54-55; Defendants' Ex. K (Sampel Criminal Case Detail) at 1.  The arrest was for possession of less than four ounces of marijuana.  Defendants' Ex. K (Criminal Case Detail) at 1.  Officer Kraeger relayed this information to Officer DeFrance and Sergeant Lukanik.  Defendants' Ex. C (DeFrance Tr.) at 41-42.

On September 23, 2012, at approximately 9:15 a.m., Plaintiffs and their minor daughter exited 44 Rome Avenue and entered a Dodge Caravan owned by

**2**

Mr. Pickering.  Defendants' Ex. C (DeFrance Tr.) at 43-44.  Ms. Sampel drove the vehicle down Rome Avenue and made two turns before Officer DeFrance pulled them over.  *Id.* at 37.  Defendants allege Officer DeFrance initiated the vehicle stop because he observed a handicap placard on Plaintiffs' rearview mirror, obstructing Ms. Sampel's view, and because Plaintiffs' center brake light was broken.  *Id.* at 18, 21-22; Defendants' Ex. I (Incident Detail Report).  Plaintiffs allege Officer DeFrance did not mention the handicap placard as an initial reason for the stop, but instead cited Plaintiffs' broken center brake light and a broken windshield wiper.  Plaintiffs' Ex. 3 (Sampel Tr.) at 32.

Officer DeFrance asked Ms. Sampel for her license and registration, and determined that Ms. Sampel's driver's license was suspended.  Defendants' Ex. C (DeFrance Tr.) at 36.  Officer DeFrance then called for backup officers.  *Id.* at 38-39; Defendants' Ex. D (Kraeger Tr.) at 32-33.  Officers Kraeger, Remotti, Julia and Schreiner arrived at the scene in response to the call.  Defendants' Ex. C (DeFrance Tr.) at 40.

Officer Kraeger testified he observed through the passenger-side window a clear plastic bag containing 42.2 grams of off-white powder in a cup holder.  Defendants' Ex. D (Kraeger Tr.) at 35-36; Defendants' Ex. C (DeFrance Tr.) at 39 (same).  Plaintiff Pickering submitted an affidavit to the contrary, asserting it would have been impossible to see the plastic bag from where Officer Kraeger was purportedly standing.  [Dkt. No. 48 (Pickering Affidavit) at 2].  Plaintiff Sampel submitted an affidavit explaining Officer Kraeger began searching the vehicle

**3**

without a warrant or Plaintiffs' consent, and found the plastic bag during his search.  [Dkt. No. 47 (Sampel Affidavit) at 3].

Officer Kraeger identified the contents of the bag as consistent with heroin. Defendants' Ex. D (Kraeger Tr.) at 35.  An officer asked Ms. Sampel what was in the bag, and she stated it was Herbalife, her weight loss supplement.  Plaintiffs' Ex. 5 (DeFrance Tr.) at 52.  Officer Kraeger conducted a field test of the powder in the plastic bag, which he and Officer DeFrance observed showed a positive result indicating heroin.  Defendants' Ex. C (DeFrance Tr.) at 51-54; Defendants' Ex. D (Kraeger Tr.) at 46-47, 58-60.  Plaintiffs did not observe the result of the test. Defendants' Ex. B (Sampel Tr.) at 52-53.  Defendants continued to search the vehicle before conducting a second test of the powder in the plastic bag. Plaintiffs' Ex. 3 (Sampel Tr.) at 53, 55.

Sergeant Lukanik, who has extensive experience with drug field tests, performed a second field test of the powder.  Defendants' Ex. D (Kraeger Tr.) at 46-47, 58-60; Defendants' Ex. H (Lukanik Tr.) at 46.  Officers Kraeger and DeFrance and Sergeant Lukanik observed that the second field test resulted in a color change indicative of heroin.  Defendants' Ex. H (Lukanik Tr.) at 46.  Plaintiff Sampel testified she saw that the second field test color was clear, suggesting no heroin presence, but also testified she has no experience or training in drug field tests.  Defendants' Ex. B (Sampel Tr.) at 53-56.

Defendants arrested Ms. Sampel and Mr. Pickering after conducting the field tests.  Defendants' Ex. C (DeFrance Tr.) at 51, 61; Defendants' Ex. H (Lukanik

**4**

Tr.) at 37-38; Defendants' Ex. I (Incident Detail Report) at 4.  Once at the police station, Officer Kraeger tested the substance a third time, in the presence of Sergeant Lukanik, which again tested positive for heroin.  Defendants' Ex. H (Lukanik Tr.) at 38, 46.

Ms. Sampel was charged with possession of narcotics, possession with intent to sell, possession within a restricted zone, risk of injury to a minor child, driving under a suspended license, driving with an improper signal lamp, and driving with a defective windshield wiper.  Defendants' Ex. I (Incident Detail Report) at 3.  Mr. Pickering was charged with possession of narcotics, possession with intent to sell, possession within a restricted zone, risk of injury to a minor child.  *Id.* at 3.  Ms. Sampel posted bond the following day and was released from police custody.  Defendants' Ex. B (Sampel Tr.) at 60.  On November 19, 2012, the Connecticut Division of Scientific Services tested the powder in the plastic bag and determined it did not contain a controlled substance.  Plaintiffs' Ex. 14 (Laboratory Controlled Substance Report) at 1.

II.   Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of "'showing' – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002); *see also Vivenzio v. City of Syracuse,* 611

**5**

F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the non-moving party to present admissible evidence in support of [its] allegations. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2001); *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  A party cannot defeat summary judgment by merely "relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Welch-Rubin,* 2004 WL 2472280 at *1; *Martinez*, 2011 WL 4396704 at *6.  If the non-moving party asserts no evidence upon which a jury

could properly find in its favor, summary judgment is appropriate. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

III.     Discussion

     A. **The vehicle stop**

Counts one and two of Plaintiffs' Complaint allege that Defendants unlawfully stopped Plaintiffs' vehicle without a "reasonable articulated reason." [Dkt. No. 1-3 ("Complaint") at 4 (Count 1) (unlawful stop as to Ms. Sampel); *Id.* at 7 (Count 2) (unlawful stop as to Mr. Pickering)]; *U.S. v. Oates*, 514 F. Supp. 2d 221, 225 (D. Conn. 2007) (stating a vehicle stop must be justified by "probable cause or a reasonable suspicion, based on specific and articulable facts of unlawful conduct").

The Fourth Amendment "prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968). "Because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot. *Id.* Reasonable suspicion exists to make an investigatory vehicle stop when the "totality of the circumstances" indicates "the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id.* The officer may have reasonable

**7**

suspicion to conduct an investigatory stop where each act or circumstance observed is "perhaps innocent in itself," but together they "warrant[] further investigation." *Id.* at 274.  Courts must not "divide and conquer" the reasonable suspicion analysis; reasonable suspicion may exist based on the totality of the circumstances even where each individual circumstance is apparently innocent. *Id.* at 273-74.

Here, Officer DeFrance testified he stopped Plaintiffs' vehicle because Plaintiff Pickering's handicap placard was hanging from the vehicle's rearview mirror at the time of the stop and because the vehicle's center brake light was inoperable.[1]  Mot. for SJ at 8-9; Defendants' Ex. C (DeFrance Tr.) at 18 ("I stopped the vehicle because the . . . center brake light was out.  And the large handicapped sticker on the rear-view mirror obstructs the driver's view."); Defendants' Ex. I (Incident Detail Report) at 5 ("I observed [Plaintiffs' vehicle] on Rome Ave approaching Spring St.  The center brake light was out and there was a

---

[1] Plaintiffs testify that Officer DeFrance stopped them because their center brake lamp was inoperable and because their windshield wiper blades were broken, and only after the stop had initiated charged Ms. Sampel with driving with an obstructed view.  Plaintiffs' Ex. 3 (Sampel Tr.) at 32 ("What was the officer's response when you asked him why you were being pulled over?  A.  "He said my brake lights weren't working and my windshield wiper wasn't working.  Q.  Okay.  Did he say anything to you about driving with an obstructed windshield?  No.").  As discussed below, were the parties to agree the on the reasons for the stop, summary judgment on the legality of the stop would still be inappropriate.

large handicap parking pass hanging on the rear view mirror, obstructing the operator's view.").  The Court examines Defendants' reasons in turn and then evaluates the totality of the circumstances as required under *Arvizu*, 534 U.S. at 273-74.

      i.  **The center brake light**

Connecticut law requires motor vehicles to "be equipped with two or more stop lamps."  C.G.S.A. § 14-96(e)(a).  Plaintiffs' vehicle had two working brake lights at the time of the vehicle stop.  Plaintiffs' Ex. 5 (DeFrance Tr.) at 31-32 ("So the two brake lights on the side were operable?  A. Yes.").  Plaintiffs have raised and the Defendants do not contest that the brake lights were in compliance with the state law and therefore the broken center brake light did not constitute "reasonable suspicion to believe that criminal activity may be afoot."  *Arvizu*, 534 U.S. at 273-74.  However, in determining the propriety of the stop, the Court must consider the totality of the circumstances.  *Id.* at 273-74.  Accordingly, the Court next turns to Defendants' allegation that Officer DeFrance also stopped Plaintiffs' vehicle because Ms. Sampel was driving with an obstructed view.

      ii.  **The handicap placard**

Connecticut law states that "[n]o article, device, sticker or ornament shall be attached or affixed to or hung on or in any motor vehicle in such a manner or location as to interfere with the operator's unobstructed view of the highway or to distract the attention of the operator."  C.G.S.A. § 14-99(f)(c).  The mere fact that an officer "saw the [object] hanging from the rearview mirror and mistakenly

**9**

believed that 14-99(f) makes it an infraction for a car to be driven with any object hanging from a rearview mirror" is insufficient to establish a lawful vehicle stop. *State v. Cyrus*, 297 Conn. 829, 839 (Conn. 2010).

The law also requires "some evidence upon which the trial court could have concluded that [the officer] . . . had a reasonable suspicion, one that necessarily could be articulated, that the [object hanging from the mirror] interfered with the defendant's unobstructed view or distracted his attention." *Id*. The Connecticut Supreme Court further noted that "[a]lthough the legislature could have chosen to do so, it has not specifically prohibited the hanging of objects from a vehicle's rearview mirror." *Id*. at 841 (contrasting statutes from other states explicitly stating that hanging objects from a rearview mirror is unlawful in and of itself).

Further, an officer may not rely on the size of the object hanging from a rearview mirror to conclude that it is an obstruction where "the object was relatively small and dwarfed by the size of the motor vehicle's windshield." *Id*. at 842. Connecticut General Statute Section 14-253(a)(d), which Defendants cite in support of their position, does not state otherwise.

Section 14-253(a)(d) states where handicap placards must be displayed when a vehicle is parked in a handicapped space – namely, on the rearview mirror or prominently on the dashboard. C.G.S.A. § 14-253(a)(d). The statute does not state, as Defendants contend, that handicap placards may not be so displayed unless the vehicle is parked. *Id*.

**10**

Here, Plaintiffs offer that Officer DeFrance testified that he did not observe Ms. Sampel driving in a distracted or impaired manner.  Plaintiffs' Ex. 5 (DeFrance Tr.) at 23 ("Did you see or observe any distracted driving?  A. I don't recall any distracted driving.  Q. Did she make a right turn as she drove the vehicle while you were behind her?  A. Yes.  Q. And she negotiated that turn successfully?  A. Yes.  Q. Made a left turn?  A. Yes.  Q. And she negotiated that turn successfully?  A. Yes.").  The Defendants offer no evidence that Officer DeFrance observed anything from which he deduced that Ms. Sampel's visibility was hampered by the handicapped placard hanging from the mirror.  As a result, the Defendants have failed to articulate a reasonable suspicion justifying the stop based on the location of the handicapped placard.

Plaintiffs have offered evidence that could lead a reasonable jury to conclude there was no reasonable basis to conduct the vehicle stop for either of the grounds Officer DeFrance cited.  Nor do the totality of the circumstances viewed in the light most favorable to Plaintiffs – driving with two working brake lights and an unobstructive handicap sticker – preclude a jury finding in Plaintiffs' favor. Accordingly, summary judgment on the legality of the vehicle stop is DENIED.

### B.  The vehicle search

Count Two of Plaintiffs' Complaint also alleges that the vehicle search violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  [Dkt. No. 1-3 ("Complaint") at 9 (Count 2) (unlawful warrantless search

**11**

of Mr. Pickering's vehicle)]; *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968).  Plaintiffs have offered evidence that Defendants had no warrant to search Mr. Pickering's vehicle, and that Plaintiffs did not give permission for a consensual vehicle search.  Plaintiffs' Ex. 4 (Pickering Tr.) at 91 ("I told him . . . 'You ain't got a search warrant.  You ain't – you just jumping this, that, doing my stuff because that's all this is.'  I said, 'Do you have a warrant?' 'No.  I could do this.'"); Plaintiffs' Ex. 3 (Sampel Tr.) at 39 ("[D]id he ask you if he could search the car?  A. No, he didn't.").  Defendants do not allege otherwise.  Additionally, deposition testimony from the officers on the scene also reveals they were not concerned for their safety, obviating the need for a *Terry* search[2] (nor do Defendants allege the vehicle search falls under *Terry*).  Defendants' Ex. C (DeFrance Tr.) at 39 ("Did you feel unsafe at the time you approached them?  A. Unsafe? No.").

While Defendants do not dispute the warrantless or nonconsensual nature of the vehicle stop, Defendants move for summary judgment asserting their

---

[2] *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) allows a police officer to conduct a "carefully limited search" for weapons where he "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing *may be armed and presently dangerous*, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his *reasonable fear for his own or others' safety*.  (emphasis added).

search of the vehicle falls within an exception to the Fourth Amendment's protection against warrantless searches. Defendants assert they had probable cause to conduct the vehicle search based on potential contraband discovered in plain view, coupled with the tip received the prior day.  The Court addresses seizure of the potential contraband and the subsequent vehicle search in turn.

### i. Warrantless seizure of potential contraband under the plain-view doctrine

Officer Kraeger testified he saw a plastic bag through the window of Plaintiffs' vehicle and conducted a lawful warrantless seizure of the bag under the plain-view doctrine.  Defendants' Ex. D (Kraeger Tr.) at 34-35 (stating Officer Kraeger was standing "two feet" from the "front passenger window" where Mr. Pickering was seated when he "observed in plain view in the right rear cup holder of the passenger seat what appeared to be in a clear plastic baggie with hearts on it suspected heroin").

Officers may seize property without a warrant if they "are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and the officers have a lawful right of access to the object." *U.S. v. Reyes*, 283 F.3d 446, 468 (2d Cir. 2002) (quoting *U.S. v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir. 1993).  If the incriminating character of the property is not immediately apparently with certainty, the officer may seize the property on "less than probable cause."  *Arizona v. Hicks*, 480 U.S. 321, 327 (1987) (citing *U.S. v. Place*, 462 U.S. 696, 709 (1983).  However, the seizure must be "minimally

**13**

intrusive and operational necessities render it the only practicable means of detecting certain types of crime," for example, to test the property for drugs. *Id*. The plain-view doctrine allows warrantless seizure of the item in question; it does not validate a warrantless search in and of itself. *Ruggiero v. Krzeminski*, 928 F.2d 558, 562 (2d Cir. 1991).

Plaintiffs offer evidence attacking the first element of the plain view doctrine: that Officer Kraeger neither did nor could see the plastic bag in question from a lawful position.  Plaintiff Sampel stated in a sworn affidavit that "Officer Kraeger did not stand outside the passenger side window to speak with Mr. Pickering.  Officer Kraeger entered the van on the passenger side door located just after the passenger front door. . . . Officer Kraeger found the HerbaLife Product . . . by searching the van."  Sampel Affidavit at 3.  Plaintiff Pickering also testified at his deposition that Officer Kraeger discovered the plastic bag while conducting a warrantless search of the vehicle, stating he

> ripped the car apart; do this here, taking this here . . . The guy went under the hood and started ripping stuff from here.  I said, 'Officer, what are you looking for?' . . . I said, 'I was pulled over here by a motor vehicle charge and now you come in here and you ripping the car apart.'  I said, 'Do you got a warrant?' . . . He opened the car door, started ripping stuff apart and went to the back and seen this bag.

Plaintiffs' Ex. 4 at 90-91.

Plaintiffs and Defendants offer conflicting accounts of Officer Kraeger's position when he discovered the plastic bag.  Accordingly, Plaintiffs have presented evidence such that a reasonable jury could find that Officer Kraeger

**14**

failed to meet the first element of the plain-view analysis by observing the plastic bag while unlawfully searching Mr. Pickering's vehicle.  *Anderson*, 477 U.S. at 248-49.  Summary judgment on the lawfulness of the bag seizure under the plain-view doctrine is accordingly DENIED.

> ### ii.  The subsequent warrantless search under the automobile exception

Defendants allege Officer Kraeger's observation of the plastic bag in plain view, coupled with the anonymous tip Defendants received the previous day indicating Plaintiffs were selling heroin, provided probable cause to conduct a warrantless search of the vehicle.  Mot. for SJ at 10-11.

An officer may conduct a warrantless search of an automobile if the officer has probable cause to believe contraband is hidden inside.  *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999); *U.S. v. Ross*, 456 U.S. 798, 823-24 (1982).  Probable cause to search a vehicle is a "commonsense, nontechnical conception" that exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."  *Ornelas v. U.S.*, 517 U.S. 690, 695-96 (1996).

As discussed above, Plaintiffs have offered sufficient evidence that a reasonable jury could find Officer Kraeger did not find the plastic bag before beginning the vehicle search.  The only other evidence Defendants offer supporting their belief the vehicle contained contraband is the anonymous tip received the previous day.  An anonymous tip on its own, however, "seldom

15

demonstrates the informant's basis of knowledge or veracity" sufficient to provide probable cause. *Alabama v. White*, 496 U.S. 325, 329 (1990). Whether an anonymous tip supports probable cause depends on the totality of the circumstances, for example, the informant's reliability in the past, the tip's specificity, whether the tip is based on the informant's professed first-hand knowledge, and whether the information is corroborated by other facts. *Illinois v. Gates*, 462 U.S. 213, 233-34 (1983).

Defendants offer, to bolster the anonymous source's credibility, that Ms. Sampel and Mr. Pickering live at 44 Rome Street as the informant stated, and that Ms. Sampel has a prior narcotics arrest. Defendants' Ex. D (Kraeger Tr.) at 55 ("After you received this information [from the informant, that Ms. Sampel lived on Rome Avenue], I think it was your testimony that you ran Wanda Sampel's name through the computer? A. In-house, correct. Q. Okay. And did that, as a result of that did you come up with the Rome Avenue address for Wanda Sampel? A. Correct."); Defendants' Ex. K (Criminal Case Detail) at 1 (indicating Ms. Sampel pled guilty to a misdemeanor drug charge). However, Ms. Sampel's prior narcotics arrest was not for heroin distribution, but for possession of less than four ounces of marijuana. Ex. K (Criminal Case Detail) at 1 (indicating misdemeanor drug charge was for possession of less than four ounces of marijuana).

Defendants offer no other evidence indicating the totality of the circumstances surrounding the anonymous tip provided probable cause to

**16**

search Plaintiffs' vehicle.  Defendants do not assert the informant has proven reliable in the past, or that the informant's tip was based on first-hand knowledge, as might corroborate the tip enough to support probable cause under *Gates*, 462 U.S. at 233-34.  Nor does Defendants' account of the tip give specific information about Plaintiffs or their activities.  *Gates*, 462 U.S. at 233-34.  Rather, Officer Kraeger's testimony as to the substance of the tip is limited to notes reading "Rome Ave. . . . Red [indicating the color of the house] . . . third floor . . . Wanda Sampel . . . Hector . . . Lee."  Defendants' Ex. D (Kraeger Tr.) at 54.  Critically, in his sworn testimony, Officer Kraeger admitted that at the time he received the tip, "[w]e had nothing credible to believe that the anonymous tip was actually true." *Id*. at 24.

Resolving all ambiguities and crediting all factual inferences in favor of Plaintiffs (*PepsiCo, Inc.,* 315 F.3d at 105), a reasonable jury could find that Defendants did not discover the plastic bag before the search, that the informant's tip did not provide probable cause on its own, and that the vehicle search accordingly lacked probable cause.  Summary judgment on the legality of the vehicle search is accordingly DENIED.[3]

---

[3]     Defendants also seek summary judgment on Plaintiffs' state law claims under Article 1, Sections 7 and 9 of the Connecticut Constitution.  Mot. for SJ at 19.  The same "reasonable suspicion" standard governs investigatory searches and seizures under both Connecticut law and federal law.  *See, e.g.*, *State v. Peterson*, 320 Conn. 720, 732-33 (Conn. 2016); *State v. Kelly*, 313 Con. 1, 16 (2014)

C.  The arrests of Ms. Sampel and Mr. Pickering

Defendants assert Plaintiffs cannot recover on their claims for false arrest under 42 U.S.C. § 1983 because Defendants had probable cause to arrest Plaintiffs.  Section 1983 provides: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Probable cause "is a complete defense to false arrest claims" under Section 1983.  *Simpson v. N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015); *Huaman v. Sirois*, 13-cv-484, 2015 WL 5797005, *8 (D. Conn. Sept. 30, 2015) (same).

Probable cause to arrest exists "when, based on the totality of the circumstances, the officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Finigan*, 574 F.3d 57, 62 (2d Cir. 1957) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)); *Simpson*, 793 F.3d at 265;

---

(analyzing federal Fourth Amendment claims and Connecticut §§ 7 and 9 claims for unlawful search and seizure concomitantly, explaining "reasonableness is the touchstone of both the fourth amendment and article first § 7.")  Accordingly, summary judgment is DENIED as to Plaintiffs' state law allegations of unlawful vehicle stop, search and seizure for the reasons set forth in sections (III)(a) and (b).

18

*Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007).  The arresting officer must have more than "mere suspicion of wrongdoing," but has probable cause to make an arrest where "the factual and practical considerations of everyday life" make "wrongdoing or the discovery of evidence thereof probable."  *Walczyk*, 496 F.3d at 156-57.

> i.   **Ms. Sampel's arrest**

Ms. Sampel's arrest resulted in a criminal conviction for operating a vehicle with a suspended license.  Defendants' Ex. L (Criminal Case Detail) at 1 (showing Ms. Sampel pled guilty on November 20, 2012 to operating a vehicle under a suspended license on September 23, 2012, the date of the arrest in question).  A party cannot allege false arrest for a claim for which he or she did not receive a favorable disposition.  *Hec v. Humphrey*, 512 U.S. 477, 478-79 (1994); *Poventud v. City of N.Y.*, 715 F.3d 57, 68-69 (2d Cir. 2013); *Roesch v. Otarola*, 980 F.2d 850, 853-54 (2d Cr. 1992).

Plaintiffs do not dispute Ms. Sampel's license was suspended, but contend her arrest was the fruit of the poisonous tree of Officer DeFrance's illegal vehicle stop.  Plaintiffs' SoF at ¶ 44.  However, the fruit of the poisonous tree is an extension of the exclusionary rule.  *Segura v. U.S.,* 468 U.S. 796, 804 (1984).  The doctrine is calculated "to deter future unlawful police conduct" and protect liberty by creating an incentive—avoidance of the suppression of illegally seized evidence—for state actors to respect the constitutional rights of suspects.  *U.S. v. Calandra,* 414 U.S. 338, 347 (1974); *see also U.S. v. Peltier,* 422 U.S. 531, 536–39

**19**

(1975).  As a general rule, it has been held "to apply only in criminal trials." *Pennsylvania Bd. Of Probation & Parole v. Scott*, 524 U.S. 357 (1998).  Consistent with these principles, the Second Circuit has expressly declined to apply it to support 42 U.S.C. § 1983 claims.  *Cyrus v. City of N.Y.*, 450 F. App'x 24, 26 (2d Cir. 2011); *Townes v. City of N.Y.*, 176 F.3d 138, 145 (2d Cir. 1999).  The arrests of plaintiffs must accordingly be analyzed independent of the initial stop.  *Hargroves v. City of N.Y.*, 411 F. App's 378, 384 n.5 (2d Cir. 2011).

Since Plaintiffs offer no evidence to refute that Ms. Sampel was driving under a suspended license in violation of Connecticut General Statute § 14-215, and later pled guilty to that crime, summary judgment in favor of Defendants regarding the legality of Ms. Sampel's arrest is GRANTED.

### ii.  Mr. Pickering's arrest

Defendants argue probable cause existed to arrest Ms. Sampel and Mr. Pickering based on the positive field tests of the contents of the plastic bag found in Mr. Pickering's vehicle.  Mot. for SJ at 3-5.  As the Court has already determined the propriety of Ms. Sampel's arrest on other grounds, the Court focuses here on whether the field tests of the substance in the plastic bag in the back of Mr. Pickering's vehicle provided probable cause for his arrest.

Officer Kraeger and Sergeant Lukanik each tested the contents of the plastic bag at the scene before arresting Plaintiffs, and received a test result indicative of heroin each time.  Defendants' Ex. C (DeFrance Tr.) at 51-54 (indicating Officer Kraeger and Sergeant Lukanik each tested the bag's contents

**20**

at the scene, stating the result of the first test showed a "positive color reaction for heroin"); Defendants' Ex. D (Kraeger Tr.) at 46-47, 58-60 (stating he tested the plastic bag's contents, which changed to a "yellow-ish green color . . . indicative of heroin"); Defendants' Ex. H (Lukanik Tr.) at 46 (recalling he tested the bag's contents at the scene and observed a positive test result for heroin).  Officer Kraeger tested the bag's contents a third time upon returning to the police station, and observed a third positive result.  Defendants' Ex. H (Lukanik Tr.) at 38, 46 (stating he and Officer Kraeger observed a third positive test result at the police station).

Plaintiffs offer contradictory testimony that Ms. Sampel saw that the second field test was clear in color.  Defendants' Ex. B (Sampel Tr.) at 53-56.  However, Plaintiffs offer no evidence that Ms. Sampel has any experience or training in conducting or reading drug field tests.  [Dkt. No. 41-1 (Plaintiffs' Local Rule 56(a)(2) Statement) at ¶ 30 ("Admit Ms. Sampel does not know how the kits work.")].  Plaintiffs offer other evidence bolstering Ms. Sampel's testimony.  She points out that the police conducted three field tests of the substance found.  This evidence could lead a reasonable jury to believe that the first or the second test was negative or inconclusive, but not the third.  Plaintiffs offer no other evidence, such as expert testimony as to the appearance of a drug field test indicative of heroin.  Ms. Sampel's testimony as to the appearance of some, but not all, of the test results and her lack of education, training, or experience in reading such test kits, coupled with the contradictory testimony of two officers

and a sergeant, all of whom are educated, trained, and experienced in reading such test kits, could not lead a reasonable jury to conclude that the field tests results were not indicative of heroin.[4]

Plaintiffs also argue that even if the field test results were positive for heroin, Mr. Pickering's arrest was still unlawful because the plastic bag did not belong to him.  Plaintiffs' Ex. 5 (DeFrance Tr.) at 52.  However, probable cause exists to arrest all passengers of a vehicle for constructive possession of contraband found therein where the contraband is accessible to all passengers and no information singles out one individual as the possessor.  *Maryland v. Pringle*, 540 U.S. 366, 373 (2003); *see also U.S. v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008) ("[T]he Supreme Court has . . . said that it is reasonable to infer that if one person in a vehicle is engaged in drug dealing, so are the other

---

[4] A final test of the plastic bag's contents conducted at the police station on November 19, 2012 produced a negative result.  Plaintiffs' Ex. 14 (Laboratory Controlled Substance Report) at 1.  However, a later negative lab result does not retroactively compromise probable cause to make an arrest when a "reasonably trustworthy" field test result was positive.  *Green v. Webster*, 359 F. App'x 249 (2d Cir. 2010).  Here, Sergeant Lukanik testified that he has used the field test kit in question "quite a large amount of times" in his 18 years as a police officer and three years in the narcotics unit.  Defendants' Ex. H (Lukanik Tr.) at 6.  Sergeant Lukanik further testified he had never had a field test kit of the kind used that day give a false positive result.  *Id.* at 47.  Additionally, Officer Kraeger, who conducted the first field test, testified he saw a positive color change that matched the description for heroin given in the instructions on the field test kit's box, and that he had "absolutely no reason to doubt" that he had observed an accurate positive reaction for heroin.  Defendants' Ex. D (Kraeger Tr.) at 60.

passengers."); *U.S. v. Polanco*, 506 F. App'x 55, 57 (2d Cir. 2012) (finding probable cause existed to arrest driver of car containing contraband professed to belong to another, because circumstances led the police officer to believe the driver was not an "unwitting stranger" to the contraband owner).

Here, Plaintiff Sampel explained to Officer DeFrance that the plastic bag was Herbalife belonging to Ms. Sampel, not Mr. Pickering. Plaintiffs' Ex. 5 (DeFrance Tr.) at 52 ("How did you identify the owner of the powder?  A. Miss Sampel stated it was hers.").  However, Officer DeFrance concluded based on the positive test results, corroborated by the informant's tip, that the bag was heroin, not HerbaLife, and further concluded the bag belonged to Ms. Sampel and Mr. Pickering based on the informant's statement that they were acting in concert to distribute heroin.  *Id.* at 52 (stating Officer DeFrance arrested Mr. Pickering for possession of narcotics because "[h]e was in the vehicle with [the narcotics]. And we had determined that he was the Lee from [the informant's statement] the day before.")  The tip naming both parties supports an inference that both constructively possessed the plastic bag.  *See Maryland*, 540 U.S. at 373-74.

Accordingly, Plaintiffs fail to offer evidence that could lead a reasonable jury to conclude, despite multiple positive field tests indicating the plastic bag found in Mr. Pickering's vehicle was heroin, that there was no probable cause to arrest him.  As probable cause "is a complete defense to false arrest claims"

under Section 1983 (*Simpson*, 793 F.3d at 265), summary judgment in favor of

Defendants on Mr. Pickering's false arrest claim is GRANTED.[5]

### D.  Plaintiffs' negligence claims

Defendants, in an abundance of caution, also sought summary judgment

on negligence, on the off-chance Plaintiffs' Complaint could be construed to

assert such a claim.  The Complaint has four counts, none of which are titled

"negligence."  While the term "negligent" is used to describe the conduct of the

Defendants in the allegations of each of Plaintiffs' four counts, the court does not

construe this descriptor as a count in and of itself.  Therefore, the Court does not

address the propriety of negligence counts not asserted in the Complaint.

### E.  Qualified Immunity

Defendants further assert that, even if Plaintiffs' claims otherwise have

merit, they are barred by the doctrine of qualified immunity.  Qualified immunity

"protects public officials performing discretionary functions from personal

liability in a civil suit for damages insofar as their conduct does not violate clearly

---

[5] False arrest claims brought under Connecticut law require the same probable cause analysis as federal false arrest claims.  *Gleis v. Buehler*, 374 F. App'x 218, 219-220 (2d Cir. 2010); *Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007) (explaining that under both federal and Connecticut law, probable cause to arrest exists when circumstances would lead a reasonable person to believe the arrested person has committed or is committing a crime).  For the reasons stated in section (III)(c), Defendants established probable cause to arrest Ms. Sampel and Mr. Pickering, and Summary judgment on Plaintiffs' state law false arrest claims is accordingly granted.

24

established statutory or constitutional rights of which a reasonable person would

have known." *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

  To determine whether the qualified immunity defense bars Plaintiffs'

claims, the Court must determine (1) "whether the facts that a plaintiff has alleged

. . . make out a violation of a constitutional right," and (2) "whether the right at

issue was 'clearly established' at the time of defendant's alleged misconduct."[6]

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Jenkins v. City of N.Y.*, 478

F.3d 76, 87 (2d Cir. 2007).  At step one, the Court must determine whether

defendant acted reasonably given the facts and circumstances at play.  *Saucier v.

Katz*, 533 U.S. 194, 202-203 (2001).

  At step two, the court must determine "whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."

*Id.* at 202.  This inquiry "protect[s] officers from the sometimes hazy border"

between lawful and unlawful activity, and "ensure[s] that before they are

subjected to suit, officers are on notice their conduct is unlawful."  *Id.* at 205-06.

Step two of the qualified immunity analysis protects "all but the plainly

---

[6] The two steps of the qualified immunity analysis may be conducted in any order
the court deems appropriate given the facts at hand.  *Pearson v. Callahan*, 555
U.S. 233, 236 (2009).

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

At the summary judgment stage, a Court may not make a qualified immunity determination where "[t]he matter of whether it was reasonable for the officers to believe their actions met the standards set by th[e] legal principles governing defendants' conduct depends on whether one believes their version of the facts," and Defendants' version "is sharply disputed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996); *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) ("summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain"); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").

The Court cannot determine whether qualified immunity precludes Plaintiffs' allegation of unlawful vehicle stop on summary judgment. The first alleged reason for Officer DeFrance's decision to conduct the stop, Plaintiffs' broken center brake light, does not involve a preclusive question of fact at the summary judgment stage under *Weyant*, 101 F.3d at 858. However, Defendants fail to establish that the law regarding brake lights was not "clearly established" when Officer DeFrance made the stop. The law regarding brake lights is clearly written to require "two or more stop lamps." C.G.S.A. § 14-96(e)(a). Officer DeFrance understands that "the correct [number of working brake lights] is a

**26**

minimum of two." Plaintiffs' Ex. 5 (DeFrance Tr.) at 32. The difference between two and three working brake lights is not the type of "hazy border" between lawful and unlawful activity" to which qualified immunity applies. *Saucier v. Katz*, 533 U.S. at 205.

Nor may Defendants rely on their second alleged reason for stopping Plaintiffs' vehicle to secure qualified immunity on summary judgment. Officer DeFrance's professed decision to stop Plaintiffs' vehicle based on Mr. Pickering's handicap placard turns on "whether one believes [Defendants'] version of the facts." *Weyant*, 101 F.3d at 858. Regardless of whether the law regarding obstructions of a driver's vision is clear, or whether Officer DeFrance reasonably believed Ms. Sampel's view was obstructed, the parties dispute whether Officer DeFrance gave the handicap placard as a reason for the initial stop. Plaintiffs' Ex. 3 (Sampel Tr.) at 32 ("What was the officer's response when you asked him why you were being pulled over? A. "He said my brake lights weren't working and my windshield wiper wasn't working. Q. Okay. Did he say anything to you about driving with an obstructed windshield? No.")). The factual dispute as to whether the handicap placard was one of the reasons for the stop is preclusive at this time. *Weyant*, 101 F.3d at 858. Accordingly, summary judgment as to whether qualified immunity bars Plaintiffs' challenge of the vehicle stop is DENIED.

Disputes of fact also preclude a finding of qualified immunity as to Plaintiffs' allegations of unlawful vehicle search and seizure on summary judgment. Defendants seek to rely on the plain-view doctrine to allow the

27

warrantless seizure of the plastic bag, but Plaintiffs assert the bag was not in plain view, and Defendants instead discovered it while "rip[ping] the car apart" in an unlawful warrantless search.  Plaintiffs' Ex. 4 (Pickering Tr.) at 90-91. Defendants' allegation that probable cause existed to conduct the subsequent vehicle search because of the bag's discovery combined with the informant's tip suffers the same fate.  Since Defendants have not offered sufficient evidence to establish that the informant's tip provided probable cause on its own (see part III(c)(ii) above), the Court cannot determine whether Defendants had probable cause to conduct the warrantless vehicle search without determining whether Defendants saw the plastic bag before beginning the search.  How and when Officer Kraeger discovered the plastic bag is "sharply disputed."  *Weyant*, 101 F.3d at 858.  Summary judgment regarding application of qualified immunity to Plaintiffs' unlawful vehicle search claims is accordingly DENIED.

Finally, the Court need not determine whether qualified immunity would preclude Plaintiffs' false arrest claims, as the Court disposed of those claims in part III(c) above.

### IV.   Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  The Clerk is directed to enter partial judgment in favor of Defendants in accordance with this decision.

The case is referred to the Honorable Magistrate Judge Robert Richardson for a settlement conference; all proceedings in connection therewith must be

**28**

concluded prior to the November 3, 2016 joint trial memorandum deadline.  The parties are directed to contact Judge Richardson's chambers jointly in a conference call within fourteen (14) days of the date of this Order to schedule a settlement conference.  The December 2016 trial and November 3, 2016 joint trial memorandum deadlines will not be continued for settlement purposes.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 30, 2016

29